IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

HIRAM WHATLEY

*Plaintiff,*

v.  No. 1:21-cv-01726-SB

CITY OF WILMINGTON

*Defendant.*

---

Michele D. Allen, ALLEN & ASSOCIATES, Wilmington, DE.

*Counsel for Plaintiff.*

John Dana Stant, II, Rosamaria Tassone-DiNardo, CITY OF WILMINGTON LAW DEPARTMENT, Wilmington, DE.

*Counsel for Defendant.*

---

**MEMORANDUM OPINION**

December 15, 2022

---

BIBAS, *Circuit Judge*, sitting by designation.

Defendants often want to jump the gun, introducing evidence as soon as possible in the hope of shortening litigation. But a motion to dismiss is not the time to weigh evidence.

Hiram Whatley alleges disability discrimination by the City of Wilmington. Wilmington submits evidence contradicting Whatley's allegations. But I cannot consider that evidence yet. So Whatley's discrimination claim survives for now.

## I. A F<small>IREFIGHTER</small> I<small>S</small> I<small>NJURED</small>

On this motion to dismiss, I take all well-pleaded facts in the Complaint as true. Hiram Whatley was a Wilmington firefighter for more than two decades. Compl., D.I. 1 ¶¶ 15–17. In June 2019, he injured his back in a training exercise. *Id.* ¶¶ 18–19. This injury kept him out of work and ultimately required surgery. *Id.* ¶¶ 20–29. When Whatley asked for light duty, the Fire Chief told him that no such assignment exists in the fire department. *Id.* ¶¶ 21–22. Whatley also sought extensions of his medical leave. *Id.* ¶¶ 26–36. But in July 2020, Wilmington fired Whatley after more than a year away from work. *Id.* ¶¶ 18, 35.

Although Wilmington says it fired Whatley because he could not do his job, he claims this was a pretext for disability discrimination. *Id.* ¶ 36; Mot. to Dismiss, D.I. 6 at 11–12. He also claims that he was contractually entitled to health-insurance benefits after his termination. Compl. ¶¶ 38–40. So he is suing under the Americans with Disabilities Act and for breach of contract. *Id.* ¶¶ 41–66. Wilmington now moves to dismiss. D.I. 6.

I consider whether Whatley's "complaint … contain[s] sufficient factual matter, accepted as true, to state a [plausible] claim to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

## II. I Cannot Consider All of Wilmington's Documents

Whatley attaches two exhibits to his complaint, both of which establish his right to sue under Delaware and federal law. Compl. Ex. A, B. Wilmington, by contrast, submits 38 exhibits with its motion to dismiss. D.I. 9 at 1–5. Whatley objects that considering these documents is improper on a motion to dismiss. Resp., D.I. 13 at 3–4.

I can consider some, but not all, of Wilmington's exhibits. In general, considering material outside the pleadings requires a court to convert a motion to dismiss into a motion for summary judgment. Fed. R. Civ. P. 12(d). But "a document integral to or explicitly relied upon in the complaint may be considered without" conversion. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotation marks and emphasis omitted). That category includes, for example, the contract in a contract dispute. *E.g. CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 168 n.2 (3d Cir. 2014). But it does not cover every document the plaintiff had access to.

So I consider the two documents underlying Whatley's breach-of-contract claim: the Collective Bargaining Agreement and Wilmington's Policy 402.1. *See* Compl. ¶¶ 61–64 (citing both). But I may not, as Wilmington asks, consider Whatley's medical records, employment records, or emails. Reply, D.I. 14 at 5–6. If I considered those, I would need to give Whatley a chance to produce more documents that might put Wilmington's in context. That is beyond a motion to dismiss.

### III. THE DISCRIMINATION CLAIM SURVIVES

To establish a prima facie case of disability discrimination, Whatley must "establish that he (1) has a disability, (2) is a qualified individual, and (3) has suffered an adverse employment action because of that disability." *McNelis v. Pa. Power & Light Co.*, 867 F.3d 411, 414 (3d Cir. 2017) (internal quotation marks omitted). A qualified individual is someone "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Whatley has adequately pleaded all these elements.

Wilmington argues that Whatley is not qualified because his requests for additional leave and light duty were unreasonable accommodations. D.I. 7 at 10–16. But its argument relies on documents outside the pleadings. Whatley represents that he "has performed light duty previously with the Fire Department when he was previously injured" and that other firefighters have done the same. Compl. ¶¶ 23, 24. At this stage, that is enough to show that light duty is a reasonable accommodation.

The parties also dispute whether Wilmington engaged Whatley in an interactive process to determine when and how he could return to work. But I need not address that issue just yet. "Participation in the interactive process is simply part of the employer's duty to determine if a reasonable accommodation exists." *Whelan v. Teledyne Metalworking Prods.*, 226 F. App'x 141, 147 (3d Cir. 2007); *cf. Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 194 (3d Cir. 2009). As noted, Whatley has adequately alleged that a reasonable accommodation existed. So I need not consider yet whether Wilmington asked about that accommodation.

4

## IV. THE BREACH-OF-CONTRACT CLAIM FAILS

Whatley claims that his collective-bargaining agreement entitles him to post-termination health insurance that Wilmington never provided. Compl. ¶¶ 61–65. Wilmington responds that Whatley cannot bring this claim and that it fails anyway. Wilmington is half right: Whatley can bring the claim, but it does fail.

First, Wilmington argues that Whatley lacks standing to bring this claim. D.I. 7 at 18. Not so. "It has long been established that an individual employee may bring suit against his employer for breach of a collective bargaining agreement." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163 (1983). True, the collective-bargaining agreement sets up a process to handle employment disputes. D.I. 9 Ex. KK art. 4. But Wilmington does not explain how this contractual provision affects standing. D.I. 7 at 18. So Whatley can bring this claim. But it fails on several grounds.

To start, the agreement incorporates benefits available under "ordinances or statutes." D.I. 9 Ex. KK § 19.1. Whatley claims benefits prescribed by Policy 402.1 of Wilmington's Human Resources Policy Manual. D.I. 9 Ex. LL. But this manual is neither a statute nor an ordinance. So the agreement does not incorporate it.

But wait, says Whatley: his claimed health-insurance benefits are available under the Disabled Public Safety Officer's Health Act of 1996, which the policy purports to carry out. Compl. ¶¶ 63–64; D.I. 13 at 14; D.I. 9 Ex. LL at 1. But there is no such statute. *Brown v. City of Wilmington*, 2019 WL 141744, at *3 (Del. Super. Ct. Jan. 8, 2019) ("It turns out that there is no statute enacted entitled Disabled Public Safety Employees Act of 1996."). That supposed statute seems to be a misnomer for similar language contained in a series of federal appropriation bills. *Id.* at *4. Those grants

5

seem to make funding contingent on certain benefits being provided; they do not enact the benefits. *Id.* So the collective-bargaining agreement cannot incorporate them.

Next, even if Whatley could sue based on Policy 402.1, it does not cover his situation. The policy makes post-termination health insurance available to a "*public safety officer* who retires or is separated from service as a direct or proximate result of a personal injury sustained in the line of duty while responding to a *hot pursuit or emergency situation.*" D.I. 9 Ex. LL (emphases added). A "public safety officer" is defined to include a "firefighter," so Whatley is covered. *Id.* But the definition of "hot pursuit" is ostensibly limited to police actions. *Id.* And "emergency situations" are "circumstances that warrant immediate officer action due to an emergency." *Id.* A training exercise does not qualify. So Policy 402.1 does not cover Whatley's separation after a training injury.

Finally, Whatley asks me to read a cause of action into Policy 402.1. D.I. 13 at 13–14. I decline the invitation to infer a cause of action from a human-resources policy manual. Whatley's complaint asserts a claim for breach of contract. Compl. ¶¶ 61–65. But Policy 402.1 is not a contract. And besides, Policy 402.1 on its face does not apply to this situation. So Whatley cannot recover under it on any cause of action.

* * * * *

Whatley offers just enough support for his employment-discrimination claim to survive a motion to dismiss. Wilmington will have to wait for the next stage of litigation to introduce its countervailing evidence. But Whatley's breach-of-contract claim fails for several reasons, so I will dismiss it.